UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- X
                                                                       :
**ANDRES ZAPATA DIOSA**,                                               :
                                                                       :
                                       Petitioner,                     :
                                                                       :    **MEMORANDUM DECISION AND**
                                                                       :    **ORDER**
                       – against –                                     :
                                                                       :    26-CV-4068 (AMD)
                                                                       :
**WARDEN, METROPOLITAN DETENTION**                                     :
**CENTER, BROOKLYN**,                                                  :
                                                                       :
                                       Respondent.                     :
--------------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

On June 30, 2026, U.S. Immigration and Customs Enforcement ("ICE") arrested and

detained the *pro se* petitioner after a traffic stop. (ECF No. 1 at 6; ECF No. 4 at 2.)  He is

currently detained at the Metropolitan Detention Center ("MDC") in Brooklyn, New York.

(ECF No. 1 at 1.)  The petitioner seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2241.

(*Id.* at 8.)  The Court grants the petition, as explained below.

## BACKGROUND[1,2]

The petitioner is an asylum seeker from Colombia. (*Id.* at 88–99.)  On February 4, 2024,

he entered the United States without inspection near Tecate, California. (ECF No. 4 at 1.)  U.S.

Customs and Border Protection ("CBP") arrested him and issued him a Notice to Appear

("NTA"). (*Id.*)  CBP then released him on his own recognizance, pursuant to 8 U.S.C. § 1226,

---

[1] The Court bases the discussion of the facts, which are undisputed unless otherwise noted, on the parties'
submissions, including exhibits. *See Hyppolite v. Noem*, 808 F. Supp. 3d 474, 479 n.1 (E.D.N.Y. 2025);
*Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 402 n.1 (S.D.N.Y. 2025).

[2] Having reviewed all the submissions, the Court finds that the petition "present[s] only issues of law,"
and it may, therefore, be adjudicated without a hearing. *Tumba v. Francis*, 813 F. Supp. 3d 394, 397 n.1
(S.D.N.Y. 2025); *see also* 28 U.S.C. § 2243 (directing courts to "determine the facts, and dispose" of
habeas petitions expeditiously, "as law and justice require").

pending his appearance for removal proceedings before an immigration court. (*Id.* at 1–2; ECF No. 4-1 at 1.) Until June of this year, he was living in the New York area, with his wife and six-year-old daughter. (ECF No. 1 at 23.) He has valid work authorization and pending claims for asylum and withholding of removal. (*Id.* at 56, 88–99.)

According to the petitioner, he was driving home with his wife and daughter on June 30, 2026, when ICE agents stopped him as he was trying to park his car. (*Id.* at 23.) One "vehicle struck the rear of [the] car," "another vehicle blocked [them] from the front," and "a third vehicle positioned itself alongside" them. (*Id.*) "[A]rmed individuals" got out of their cars and approached the petitioner's car "aggressively." (*Id.*) The petitioner gave the agents his driver's license and asked why he was being detained. (*Id.* at 23–24.) One of the officers "displayed what was represented as the document authorizing [his] arrest," but "it did not initially contain [his] name." (*Id.* at 24.) The petitioner saw "the officer manually write [the petitioner's] name onto the document before attempting to rely upon it as authority" for the arrest. (*Id.*; *see also id.* at 40.)

The government concedes that ICE officers were looking for someone else, and that the petitioner was not the target of ICE's investigation. (ECF No. 4 at 2; ECF No. 4-2 at 2.) The government maintains that the agents saw the petitioner's car, used "law enforcement databases" to identify the petitioner as the vehicle's owner, and determined that he "was born in Colombia and was not admitted or paroled into the United States." (ECF No. 4 at 2.) The government also concedes that ICE prepared a Form I-200, Warrant for Arrest of Alien "at the scene," but asserts that the officer prepared the warrant before they stopped the petitioner and his family. (*Id.*; ECF No. 4-2 at 2.)

ICE took the petitioner to 26 Federal Plaza in Manhattan.  (ECF No. 4 at 2.)  Although CBP released the petitioner pursuant to 8 U.S.C. § 1226 in 2024 (ECF No. 4-1 at 1), ICE nevertheless "determined that Petitioner was subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) as he had been initially apprehended within 100 miles of the border and within 14 days of his unlawful entry to the United States."  (ECF No. 4 at 2.)  On July 1, 2026, the petitioner was transferred from 26 Federal Plaza to the MDC in Brooklyn.  (*Id.*)  On July 8, 2026, the petitioner, representing himself, filed this petition for habeas relief.  (ECF No. 1.)  The Court ordered the government to show cause why the petition should not be granted.  (*ECF Order dated July 8, 2026.*)[3]  The Court also directed the government to "explain the statutory authority for its detention of the petitioner, and, if applicable, whether the petition is controlled by the Second Circuit's opinion in *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026)." (*Id.*)  The government responded to the order to show cause on July 13, 2026.  (ECF No. 4.)  The government does not address *Cuhna* directly.  (*See id.*)  Instead, it conceded that the Court's "approach" in *Ye v. Maldonado,* No. 25-CV-6417, 2025 WL 3521298 (E.D.N.Y. Dec. 8, 2025) controls the outcome in this case and is "consistent with that of the Second Circuit's later decision" in *Cunha.*  (*Id.* at 3–4.)  The government also agreed that the Court's decision in *Grance v. Maldonado*, No. 26-CV-3346, 2026 WL 1815931 (E.D.N.Y. June 24, 2026) is controlling.  (*Id.*)  The government "respectfully disagree[s]" with the reasoning in *Ye* and *Grance*.  (*Id.* at 3.)

---

[3] The Court also ordered the government not to remove the petitioner from the United States or transfer him out of the Eastern District of New York during the pendency of these proceedings.  (*See ECF Order dated July 8, 2026.*)

3

## LEGAL STANDARD

A district court is empowered "to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-CV-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Denmore v. Kim*, 538 U.S. 510, 516–17 (2003)).

## DISCUSSION

In seeking a writ of habeas corpus, the petitioner alleges that his arrest and detention violate "the Constitution and the laws of the United States," because ICE detained him "without providing a clear legal basis for the arrest," in violation of his Fifth Amendment due process rights, and because he "does not present a danger to the community or a fight risk," and "less restrictive alternatives" than detention are available. (ECF No. 1 at 6–8.)

The government incorporates the same arguments it made in opposing the petition in *Ye* (ECF No. 4 at 3–4), in which it argued that the petitioner's detention was lawful under Section 1225 because he has not been "admitted" into the country, *see Ye*, No. 25-CV-6417, ECF No. 8 (E.D.N.Y. Dec. 3, 2025). The government also incorporates its arguments from its opposition memorandum in *Grance* (ECF No. 4 at 3–4), in which it argued that ICE could cure an unlawful detention pursuant to Section 1225(b) by making a custody determination two months after it detained the petitioner, *see Grance*, No. 26-CV-3346, ECF No. 5 (E.D.N.Y. June 9, 2026). As explained above, the government agrees that *Ye*'s reasoning "is consistent with that of the Second Circuit's later decision" in *Cunha*, and *Ye* and *Grance* "would control the result in this case." (*Id.* at 3.)

4

"*Cunha* compels the conclusion that the petitioner's detention is 'governed by Section 1226(a), not Section 1225(b)(2)(A),' because he was 'already present in the United States'" for two years before his arrest. *Escalona v. Warden*, No. 26-CV-3920, 2026 WL 2018505, at *3 (E.D.N.Y. July 13, 2026) (quoting *Cunha*, 175 F.4th at 70). As the Court recently explained in *Escalona v. Warden*, *Cunha* held that Section 1225(b)(2)(A) applies only to a noncitizen "seeking admission," meaning "a noncitizen who is seeking admission *right now*, not one who sought admission in the past but no longer is." *Id.* (quoting *Cunha*, 175 F.4th at 77). *Cunha*'s holding "allows noncitizens like Petitioner, who are already present in the United States and are determined not to be a flight risk or danger to the community, to be released on bond under Section 1226(a) while their removal proceedings are pending." *Cunha*, 175 F.4th at 70.

Applying the principles enunciated in *Cunha,* the Court easily concludes that the petitioner, who was previously released on his own recognizance in February 2024, is currently being detained pursuant to 8 U.S.C. § 1226 and in violation of his rights to due process under the Fifth Amendment of the Constitution. *See Escalona*, 2026 WL 2018505, at *2–4. The "typical remedy" for "unlawful executive detention" is "of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). The government's ongoing detention of the petitioner, in the face of this complete failure of process, entitles him to immediate release.

The government is directed to release the petitioner from custody immediately and within 24 hours of this Order. The government must return to the petitioner any and all funds and/or property that was seized from the petitioner at the time of arrest. The government is directed to submit a letter to the Court certifying compliance with this Order within 48 hours of this Order. The Court further orders that the petitioner shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where

5

the government will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a). This order includes "an injunction barring deprivation [of any] of the [petitioner's] rights without the requisite procedural protections." *Khabazha v. U.S. Immigr. & Customs Enf't*, 25-CV-5279, 2025 WL 3281514, at *8–9 (S.D.N.Y. Nov. 25, 2025) (ordering that the government release the petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention] . . . including the ankle monitor and reporting requirements" and return him to the "status quo ante."). The Clerk of Court is respectfully directed to enter judgment consistent with the Order and close the case.

## CONCLUSION

For these reasons, the petition for a writ of habeas corpus under 28 U.S.C. § 2241 (ECF No. 1), is granted. The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close the case.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
      July 16, 2026

6